1  JOHN M. DESMARAIS (Bar No. 320875)
   jdesmarais@desmaraisllp.com
2  DESMARAIS LLP
   101 California Street
3  San Francisco, California 94111
   Telephone: (415) 573-1900
4  Facsimile: (415) 573-1901

5  *Attorney for Plaintiff Apple Inc.*

6

7

8              **UNITED STATES DISTRICT COURT**

9       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| APPLE INC., | Case No. 4:19-cv-6769 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT OF RES JUDICATA, NONINFRINGEMENT, AND INVALIDITY** |
| v. | |
| IXI MOBILE (R&D) LTD. and IXI IP, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Apple Inc. ("Apple") seeks a declaratory judgment that res judicata[1] bars Defendants IXI Mobile (R&D), Ltd. and IXI IP, LLC (collectively, "IXI") from asserting U.S. Patent No. 7,039,033 (the "'033 Patent") against Apple.  In the alternative, Apple seeks a declaratory judgment that (1) Apple does not infringe the '033 Patent and (2) the '033 Patent is invalid.

### NATURE OF THE ACTION

1.      This is an action for a declaratory judgment arising under the patent laws of the United States, Title 35 of the United States Code.  Apple seeks a declaratory judgment that res judicata bars IXI from asserting the '033 Patent against Apple.  In the alternative, Apple seeks a declaratory judgment that Apple does not infringe the '033 Patent and that the '033 Patent is invalid.

### PARTIES

2.      Apple is a California corporation with its principal place of business at One Apple Park Way, Cupertino, California 95014.  Apple designs, manufactures, and markets mobile communication and media devices and personal computers, and sells a variety of related software, services, accessories, networking solutions, and third-party digital content and applications.

3.      On information and belief, Defendant IXI Mobile (R&D) Ltd. ("IXI Mobile (R&D)"), formerly known as IXI Mobile (Israel) Ltd., is a company incorporated and registered under the laws of Israel with a registered address of 11 Moshe Levi Street Lezion 75658, Israel. On information and belief, IXI Mobile (R&D) is a subsidiary of non-party IXI Mobile, Inc.  On information and belief, at the time the '033 Patent was prosecuted, and until at least 2008, IXI Mobile, Inc. and its subsidiary IXI Mobile (R&D) were based in Belmont, California.  IXI Mobile (R&D) has alleged that it previously owned the '033 Patent, and that it now has an exclusive license to the '033 Patent.

---

[1] "Res judicata" is also commonly known as "claim preclusion."  To avoid confusion with patent "claims," Apple uses the term res judicata in this Complaint.

4.      On information and belief, Defendant IXI IP LLC ("IXI IP") is a New York limited liability company with its principal place of business at 405 Lexington Avenue, New York, New York 10174 and with a registered address for service of 1218 Central Avenue, Suite 100, Albany, New York 12205.  IXI IP has alleged that it is the owner of the '033 Patent and has exclusively licensed the '033 Patent to IXI Mobile (R&D).  On information and belief, IXI IP is a patent licensing entity formed in April 2014 that produces no products, and instead exists solely to assert IXI's patents.

## IXI, FOUNDED IN CALIFORNIA, DEVELOPS, PROSECUTES, ENFORCES, AND LICENSES ITS PATENTS IN CALIFORNIA

**A.      IXI Was Founded in California and Used California Counsel to Prosecute and Obtain the '033 Patent**

5.      On information and belief, IXI Mobile, Inc. was founded in 2000 and was headquartered in Redwood City or in Belmont, California, both of which are within this District.  On information and belief, Defendant IXI Mobile (R&D), the alleged former owner and current exclusive licensee of the '033 Patent, was a subsidiary of IXI Mobile, Inc., and was also located in Redwood City or in Belmont, California, within this District, until at least 2008.  A true and correct copy of IXI Mobile, Inc.'s SEC Form 8-K Report dated August 13, 2008, listing the location of IXI Mobile, Inc.'s headquarters in Belmont, California, is attached hereto as Exhibit A (IXI Mobile, Inc., Current Report (Form 8-k) (Aug. 13, 2008)).  IXI has alleged that during the time in which IXI Mobile, Inc. was headquartered in California, IXI Mobile, Inc. and its subsidiary IXI Mobile (R&D) designed, developed, and commercialized products, including the IXI Ogo family of mobile devices that IXI asserts practice the '033 patent.

6.      On information and belief, IXI retained patent prosecution counsel in California to prosecute and secure the '033 Patent.  The '033 Patent was prosecuted by the California law firm Vierra Magen Marcus Harmon & DeNiro LLP, located in San Francisco, California.

7.      The U.S. Patent and Trademark Office ("PTO") issued the '033 Patent, titled "System, Device and Computer Readable Medium for Providing Networking Services on a Mobile Device," on May 2, 2006.  A true and correct copy of the '033 Patent is attached as Exhibit B, which includes an *Ex Parte* Reexamination Certificate, issued February 1, 2018, that issued

new and amended claims for the '033 Patent, and an *Inter Partes* Review Certificate, issued

January 16, 2019, that cancelled multiple claims of the '033 Patent.  Exhibit B (U.S. Patent No.

7,039,033).

**B.     IXI Sued California-Based Apple for Infringing Originally Issued Claims of the '033 Patent in a Case That Was Transferred to and Currently Remains Pending in the Northern District of California**

8.     On October 2, 2014, IXI sued Apple in the U.S. District Court for the Southern

District of New York, alleging that Apple devices that include "Personal Hotspot" functionality

infringe certain originally issued claims of the '033 Patent, as well as certain claims of U.S. Patent

Nos. 7,295,532 (the "'532 Patent"), 7,426,398 (the "'398 Patent"), and 7,016,648 (the "'648

Patent").  *See* Complaint, *IXI Mobile (R&D) Ltd. et al. v. Apple Inc.*, No. 1:14-cv-7954-RJS

(S.D.N.Y. Oct. 2, 2014), Dkt. No. 1.  In particular, IXI accused Apple's Personal Hotspot and

related functionality of infringing the '033 Patent (the "accused products").  Exhibit C (IXI's

Second Amended Infringement Contentions, April 9, 2015).

9.     IXI similarly sued Samsung Electronics Co. Ltd. and Samsung Electronics America

Inc. (collectively, "Samsung"), and BlackBerry Limited and BlackBerry Corporation (collectively,

"BlackBerry"), in the Southern District of New York for purportedly infringing the same patents.[2]

*See IXI Mobile (R&D) Ltd. et al. v. Samsung Elecs. Co., Ltd. et al.*, No. 1:14-cv-4533-RJS

(S.D.N.Y. filed Jun. 17, 2014); *IXI Mobile (R&D) Ltd. et al. v. Blackberry Ltd. et al.*, No. 1:14-cv-

4428-RJS (S.D.N.Y. filed Jun. 18, 2014).   IXI's lawsuits against Apple, Samsung, and

BlackBerry (the "2014 Litigations") were related, but not consolidated.

10.     On December 8, 2014, representatives of IXI had an in-person meeting with Apple

representatives at Apple's California offices.

11.     On February 3, 2015, Apple, Samsung, and BlackBerry moved to transfer the 2014

Litigations from the Southern District of New York to the Northern District of California.  On

August 6, 2015, the Southern District of New York granted the motions and transferred the cases

to the Northern District of California.  *See* Opinion and Order, *IXI Mobile (R&D) Ltd. et al. v.*

---

[2] IXI did not assert the '398 Patent against Samsung.

1 | *Apple Inc.*, No. 1:14-cv-7954-RJS (S.D.N.Y. Aug. 6, 2015), Dkt. No. 71.  All of the cases were

2 | assigned to Judge Gilliam.  *See IXI Mobile (R&D) Ltd. et al. v. Apple Inc.*, No. 4:15-cv-3755-HSG

3 | (N.D. Cal. filed Aug. 17, 2015); *IXI Mobile (R&D) Ltd. et al. v. Samsung Elecs. Co. et al.*,

4 | No. 4:15-cv-3752-HSG (N.D. Cal. filed Aug. 17, 2015); *IXI Mobile (R&D) Ltd. et al. v.*

5 | *Blackberry Ltd. et al.*, No. 4:15-cv-3754-HSG (N.D. Cal. filed Aug. 17, 2015).

6 | 12.    In the 2014 Litigations, Apple, Samsung, and BlackBerry deposed a California-

7 | based co-inventor of the '532 and '033 Patents in Palo Alto, California, which is within this

8 | District, on July 1, 2015.

9 | **C.     Cancellation of IXI's Originally Asserted Claims of the '033 Patent**

10 | 13.    On June 19, 2015, Samsung and Apple filed a petition for *inter partes review*

11 | ("IPR") with the Patent Trial and Appeal Board ("PTAB") on all of the originally issued claims of

12 | the '033 Patent asserted in the 2014 Litigations.  *Samsung Elecs. Co., Ltd. et al. v. IXI IP, LLC*,

13 | No. IPR 2015-01444 (P.T.A.B. filed Jun. 19, 2015).

14 | 14.    On December 30, 2015, the PTAB instituted review of all of the challenged claims

15 | of the '033 Patent in the IPR petition filed by Samsung and Apple.  The PTAB subsequently found

16 | that all of the instituted claims were obvious.

17 | 15.    IXI appealed the PTAB's final written decision regarding the '033 Patent to the

18 | Federal Circuit.  On September 10, 2018, the Federal Circuit affirmed the PTAB's decision.  *IXI*

19 | *IP, LLC v. Samsung Elecs. Co.*, 903 F.3d 1257 (Fed. Cir. 2018).  The PTO issued an IPR

20 | certificate cancelling the challenged claims of the '033 Patent on January 16, 2019.  Ex. B. at 29-

21 | 30.

22 | **D.     *Ex Parte* Reexamination of the '033 Patent and IXI's Accusations Against**

23 | **Apple for Infringement of Claims Involved in the Reexamination**

24 | 16.    In March 2017, after the PTAB found all asserted claims of the '033 Patent

25 | obvious, and during the pendency of IXI's appeal of that decision to the Federal Circuit, IXI filed

26 | a request for *ex parte* reexamination of the '033 Patent.

27 | 17.    On April 3, 2017, IXI sent a letter to Apple at its Cupertino, California offices

28 | accusing Apple of infringing certain proposed claims that were then-pending in the ongoing *ex*

*parte* reexamination of the '033 Patent.  The letter stated: "[A]ttached hereto [is] a set of the amended claims that were submitted in conjunction with the Request for Reexamination.  Please let this serve as notice of infringement to your company for the new claims."  *See* Exhibit D (Letter from IXI IP, LLC to Apple (Apr. 3, 2017)).

18.     On February 1, 2018, the *ex parte* reexamination of the '033 Patent concluded, resulting in one amended claim (claim 56) and 68 new claims (claims 57 through 124) (collectively, the "Reexam Claims").  Ex. B at 24-28.

19.     On April 18, 2018, IXI IP sent another letter to Apple at its Cupertino, California office alleging infringement of the Reexam Claims of the '033 Patent.  The April 2018 letter stated: "[T]he Patent Office issued a Reexamination Certificate for the '033 patent, which I have attached hereto.  Please let this serve as a continuing notice of infringement to your company for the new claims."  *See* Exhibit E (Letter from IXI IP, LLC to Apple (Apr. 18, 2018)).

20.     On March 7, 2019, IXI filed a motion in the 2014 Litigations to amend its preliminary infringement contentions to, *inter alia*, add unspecified Reexam Claims of the '033 Patent.  *See IXI Mobile (R&D) Ltd. v. Apple Inc.*, Case No. 4:15-cv-03755-HSG (the "4:15-cv-03755-HSG") Dkt. 157.  Apple argued that IXI's motion should be barred by res judicata or, alternatively, that IXI's motion should be denied for failure to show "good cause."  *See* 4:15-cv-03755-HSG Dkt. 164.  IXI argued that res judicata does not preclude it from asserting the Reexam Claims of the '033 Patent against Apple and that IXI should be permitted to amend its infringement contentions.  The Court denied IXI's motion on October 11, 2019.  The Court determined that IXI had not met its burden to amend its infringement contentions because:  (1) IXI did not demonstrate sufficient diligence; and (2) Apple would be unduly prejudiced by the amendment.  Order Denying Plaintiffs' Motion for Leave to Amend Infringement Contentions and Asserted Claims, 4:15-cv-03755-HSG (N.D. Cal. Oct. 11, 2019), Dkt. 187 at 5-7.  The Court did not decide whether IXI's new claims are barred by res judicata and stated that "[i]f Plaintiffs want to enforce their newly-minted claims, they can *try* to do so in a new case."  *Id.* at 7 (emphasis added).  Therefore, there is a real and justiciable controversy between Plaintiffs and Apple regarding the enforceability of the '033 Patent against Apple.

**JURISDICTIONAL STATEMENT**

21.     This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and under the patent laws of the United States, Title 35 of the United States Code.

22.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

23.     This Court has personal jurisdiction over IXI Mobile (R&D).  Among other things, on information and belief, IXI Mobile (R&D) was, at the time the '033 Patent was prosecuted, based in this District and was a subsidiary of IXI Mobile, Inc., a California company.

24.     This Court also has personal jurisdiction over IXI IP.  Among other things, on information and belief, IXI IP has purposefully directed development, prosecution, licensing, and enforcement activities into California for its patents, including the '033 Patent, which it allegedly exclusively licenses to IXI Mobile (R&D).  *See supra* ¶¶ 3-8.

25.     Furthermore, counsel for IXI Mobile (R&D) and IXI IP conceded at the pre-motion conference on Apple's motion to transfer that the Northern District of California was an "appropriate place" for its suit:

> THE COURT:  Well, there's no dispute that Northern District of California would be an appropriate place, right?
> [IXI'S COUNSEL]:  There's absolutely no dispute . . . .

4:15-cv-03755-HSG Dkt. 30-01 at 99 (Exhibit S, Pre-Motion Conference Transcript), at 5:13-15. IXI did not dispute that there was personal jurisdiction over IXI Mobile (R&D) or IXI IP in the parties' transfer briefing.  *See, e.g.*, 4:15-cv-03755-HSG Dkt. 31 [IXI's Opposition]; Dkt. 71 [Order Granting Motion to Transfer] at 3 ("The parties do not dispute that these actions could have been brought in the Northern District of California . . . .").

26.     IXI has also taken steps, in this District, to assert the '033 Patent against Apple. *See IXI Mobile (R&D) Ltd. v. Apple Inc.*, Case No. 4:15-cv-03755-HSG (the "4:15-cv-03755-HSG") Dkt. 157 (motion to amend infringement contentions to assert reexamined claims of the '033 Patent against Apple).

27.     IXI's purposeful efforts to enforce and license its patents, including the '033 Patent, in California as described above included multiple letters accusing Apple of infringing claims that were pending in, and subsequently issued from, the *ex parte* reexamination of the '033 Patent, as well as an in-person meeting with Apple representatives at Apple's California-based offices.  *See supra* ¶¶ 10, 17, 19.

28.     IXI has also previously litigated and is currently litigating offensive claims for infringement of its patents in this District, further supporting personal jurisdiction over IXI.  *See, e.g.*, *IXI Mobile (R&D) Ltd. et al. v. Blackberry Ltd. et al.*, No. 3:15-cv-03754 (voluntarily dismissed without prejudice in February 2019); *IXI Mobile (R&D) Ltd. et al. v. Lenovo Group Ltd. et al.*, No. 4:15-cv-05439; *IXI Mobile (R&D) Ltd. et al. v. LG Corp. et al.*, No. 4:15-cv-05442; *IXI Mobile (R&D) Ltd. et al. v. Samsung Elecs. Co., Ltd. et al.*, No. 4:15-cv-03752; and *IXI Mobile (R&D) Ltd. et al. v. Apple Inc.*, No. 3:15-cv-03755.

29.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because a substantial part of the events giving rise to Apple's claim occurred in this District, and because IXI is subject to personal jurisdiction here.  *See supra* ¶ 25 (citing 4:15-cv-03755-HSG, Dkt. 30-01 at 99 (Exhibit S, Pre-Motion Conference Transcript), at 5:13-15).

30.     An immediate, real, and justiciable controversy exists between IXI and Apple as to whether IXI is estopped from asserting the '033 Patent against Apple, whether Apple is infringing or has infringed the '033 Patent, and whether the '033 Patent is invalid.  Because this action presents an actual controversy with respect to the enforceability, the noninfringement, and the invalidity of the '033 Patent, the Court may grant the declaratory relief sought pursuant to 28 U.S.C. § 2201 *et seq.*

## INTRADISTRICT ASSIGNMENT

31.     For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Action will be assigned on a district-wide basis.

1

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Declaratory Judgment That Res Judicata Bars IXI From Asserting U.S. Patent No. 7,039,033 Against Apple)

32.     Apple repeats and realleges each and every allegation contained in paragraphs 1 through 30 of this Complaint as if fully set forth herein.

33.     The ongoing litigation between IXI and Apple—*IXI Mobile (R&D) Ltd. et al. v. Apple Inc.*, No. 4:15-cv-03755—involves the same parties, IXI and Apple.

34.     In the prior litigation, the Federal Circuit affirmed the PTAB's final written decision finding the originally asserted claims of the '033 Patent unpatentable, ultimately resulting in the cancellation of those claims.  All appeals have now been exhausted.  Accordingly, the Federal Circuit's affirmance of the PTAB's final written decision is a final judgment on the merits.  *See XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) ("[T]he Patent Trial and Appeal Board of the U.S. Patent and Trademark Office (Board) held that these claims are unpatentable in a final written decision from an *inter pares* review proceeding. . . . [W]e affirm the Board's decision. . . . ***That affirmance renders final a judgment on the invalidity*** of the [asserted patent], and has an immediate issue-preclusive effect on any pending or co-pending actions involving the patent.") (emphasis added).

35.     The prior litigation involved the same claim or cause of action—assertion of the '033 Patent against Apple.  *See Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1353 (Fed. Cir. 2014) ("[I]n the absence of a clear showing that such a material difference in fact exists in a disputed patentable reexamination claim, it can be assumed that the reexamined claims will be a subset of the original claims and that ***no new cause of action will be created*** . . . .") (emphasis added).

36.     Accordingly, res judicata bars IXI from asserting the '033 Patent against Apple.

37.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

38.     A judicial declaration is necessary and appropriate so that Apple may ascertain its rights regarding the '033 Patent.

39.     Apple is entitled to a judicial declaration that res judicata bars IXI from asserting the '033 Patent against Apple.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment of Noninfringement of U.S. Patent No. 7,039,033)**

40.     Apple repeats and realleges each and every allegation contained in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.     IXI has alleged and continues to allege that Apple infringes the '033 Patent.  As explained above, res judicata bars IXI's assertion of the '033 Patent against Apple.  Should the Court disagree, the Court should enter judgment declaring that Apple does not infringe the '033 Patent.

42.     Exemplary claim 65 of the '033 Patent recites:

| Limitation | Claim Language (emphasis added) |
|---|---|
| [P] | A system for providing access to the Internet, comprising: |
| [a] | a first wireless device, in a short distance wireless network, having a software component to access information from the Internet by communicating with a cellular network in response to a first short-range radio signal wherein the first wireless device communicates with the cellular network and receives the first short-range radio signal, |
| [b] | wherein the first wireless device comprises router software to establish the short distance wireless network, wherein the router software comprises a routing component for exchange of IP packets; |
| [c] | wherein the first wireless device includes a speaker, a microphone, and a touchscreen, |
| [d] | wherein the first wireless device includes software applications including a telephony application, a personal information manager application including emails, and a location application for providing a current location of the first wireless device; and, |
| [e] | a second wireless device, in the short distance wireless network, to provide the first short-range radio signal, |

| [f] | wherein the software component includes a ***network address translator software component to translate between a first Internet Protocol ("IP") address provided to the first wireless device from the cellular network and a second address for the second wireless device provided by the first wireless device***, |
|-----|---|
| [g] | wherein the software component includes ***a service repository software component to identify a service provided by the second wireless device***. |

43.     Apple has not infringed and does not infringe any valid and/or enforceable claim of the '033 Patent, directly or indirectly, literally or under the doctrine of equivalents, through the manufacture, use, sale, and/or offer for sale of Apple's accused products.  By way of example, Apple's accused products do not satisfy at least limitations 65[f] and 65[g] of exemplary claim 65.

44.     First, Apple's accused products do not include the "network address translator software component" claimed in limitation 65[f] at least because Apple's accused devices do not include a "network address translator software component" that translates between a first IP address provided to the Apple device from a cellular network and a second IP address for a different accused Apple device that is provided by the first accused Apple device, as claimed in limitation 65[f].  For example, Apple's iPhones do not include the claimed "network address translator software component" that translates between a first IP address provided to the iPhone from a cellular network and a second IP address for an iPad connected to an iPhone via the Personal Hotspot functionality, as claimed in limitation 65[f].

45.     Second, Apple's accused products do not include a "service repository software component" as claimed in limitation 65[g] at least because Apple's accused products do not identify services provided by another wireless device in a short distance wireless network and do not store any such services in a repository.

46.     Thus, Apple's accused products do not satisfy at least limitations 65[f] and 65[g] of exemplary claim 65.  Apple does not infringe the remaining claims of the '033 Patent for at least similar reasons.

47.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

48.     A judicial declaration is necessary and appropriate so that Apple may ascertain its rights regarding the '033 Patent.

49.     Apple is entitled to a judicial declaration that it has not infringed and does not infringe the '033 Patent.

### THIRD CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity of U.S. Patent No. 7,039,033)

50.     Apple repeats and realleges each and every allegation contained in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.     As explained above, res judicata bars IXI's assertion of the '033 Patent against Apple.  Should the Court disagree, the Court should enter judgment declaring that the '033 Patent is invalid.

52.     The '033 Patent is invalid under 35 U.S.C. §§ 102 and/or 103 because its claims are anticipated and/or rendered obvious by prior art.  By way of example, exemplary claim 65 is invalid under 35 U.S.C. §§ 102 and/or 103 because it is anticipated and/or obvious in view of prior art.

53.     As an example, claim 65 is invalid as obvious in view of International Publication No. WO 2001/76154 A2 ("Marchand"), U.S. Patent No. 6,560,642 ("Nurmann"), and International Publication No. WO 1999/22338 ("Williams").  Claim 65 is identical to claim 1 of the '033 Patent (which the PTAB found unpatentable over Marchand, Nurmann, and U.S. Patent No. 6,771,635 ("Vilander")), with the exception that claim 65 further includes (i) router software, (ii) a speaker, microphone, and touch screen, and (iii) software for email and location services.  Those additional limitations were not novel or non-obvious in view of the prior art as of the purported May 2001 priority date, including Williams.  Claim 65 is therefore invalid.

54.     Marchand discloses "an ad-hoc network . . . established for a plurality of devices, and a gateway that provides access through the ad-hoc network to external wireless IP networks."

Marchand at 4:15-19.  Marchand also discussed mobile phones having multiple IP addresses and receiving IP packets from a network through a "public IP address" and forwarding those packets to a "private IP address" of a destination device.  Marchand at 4:23-30; 7:12-17; 10:30-31. Nurmann discloses an IP gateway that establishes local IP networks, performs IP address allocation for devices in a local IP network, and manages routing of IP packets to and from the local IP network.  Nurmann at 1:9-12; 2:54-60; 3:26-46.  Williams describes a "portable computer," such as a cellular telephone, that implements a speaker, a microphone, and a touch screen display.  Williams at 5:5-7; 10:24-25; 14:20-22; 17:24-26.  Williams discloses multiple functions of a "portable computer," including email, location functionality, and cellular telephone service.  Williams at 14:20-22; 25:12-14; 15:1-2.

55.     The preamble of claim 65 recites a "system for providing access to the Internet." This limitation is verbatim identical to the preamble of claim 1, which was previously found by the PTAB to be taught by Marchand as supplemented by Nurmann and Vilander.  Marchand discloses, or at a minimum renders obvious, this limitation.  For example, Marchand's system includes a mobile phone that operates as a gateway "between an external wireless Internet Protocol (IP) network and devices in the ad-hoc network."  Marchand at 4:21-23.  The gateway is "used to connect a plurality of devices [in a Piconet/ad-hoc network] … to an IP-based network such as the Internet."  Marchand at Fig. 3, 13:12-14.

56.     Limitation 65[a] of claim 65 recites "a first wireless device, in a short distance wireless network, having a software component to access information from the Internet by communicating with a cellular network in response to a first short-range radio signal wherein the first wireless device communicates with the cellular network and receives the first short-range radio signal."  This limitation is verbatim identical to the first limitation of claim 1, which was previously found by the PTAB to be taught by Marchand as supplemented by Nurmann and Vilander.  Marchand discloses, or at a minimum renders obvious, this limitation.  For example, Marchand discloses a mobile phone that is "simultaneously . . . connected to a cellular network and to an ad-hoc Bluetooth Piconet."  Marchand at 6:23-25.  Devices in Marchand communicate with the mobile phone using a short-range radio link.  Marchand at 1:29-31; 7:9-11.  During

1   operation, the mobile phone receives IP packets from a public network "through its public IP

2   address, and forwards the received packets to the private IP address of the destination device" in a

3   local network.  Marchand at 7:14-17.  The mobile phone "also translates in the other direction for

4   data going out of" the local network to the external IP network.  Marchand at 7:14-17.  In addition,

5   Marchand discloses software, including a link layer, network transport layer, operating system

6   layer, Java technology layer, JINI technology layer, JINI call control client, and SIP client,

7   performing the functionality of the mobile phone.

8          57.    Limitation 65[b] of claim 65 recites "wherein the first wireless device comprises

9   router software to establish the short distance wireless network, wherein the router software

10  comprises a routing component for exchange of IP packets."  Marchand and Nurmann render

11  obvious this limitation.  For example, Marchand discloses that "[t]he H.323 and/or SIP clients in

12  the mobile phone are enhanced to behave as a server application in order for Bluetooth compliant

13  devices to talk to other device that contain a SIP and/or an H.323 client."  Marchand at 8:25-17.

14  Marchand's mobile gateway utilizes various types of software components for exchange of IP

15  packets between devices by performing routing and communications over the cellular and local

16  wireless networks, including software components to implement a link layer, network transport

17  layer, operating system layer, Java technology layer, JINI technology layer, Bluetooth radio

18  chipset, and "an interface/Application Programming Interface (API) which is an abstraction of a

19  SIP and/or H.323 call control client. Marchand at 2:14-16; 2:27-31; 6:18-20; 6:27-30.  For

20  example, Marchand's mobile phone includes the protocol stack shown in Marchand's Fig. 2.

21  Furthermore, Nurmann performs IP address allocation for devices in a local IP network and

22  manages routing of IP packets to and from the local IP network.  Marchand at 1:9-12; 2:54-60;

23  3:26-46.  It would have been obvious to implement Nurmann's DHCP server component on

24  Marchand's gateway, which, when active, allocates private IP addresses to devices connected to a

25  network.  The DHCP server is router software that establishes the short distance wireless network

26  by allocating IP addresses, and it comprises a routing component for exchange of IP packets.

27  Nurmann at 1:20-53; 2:6-67; 3:39-50; 4:36-50.

28

58.     Limitation 65[c] of claim 65 recites "wherein the first wireless device includes a speaker, a microphone, and a touchscreen."  Marchand and Williams render obvious this limitation.  For example, Marchand explains that devices that "provide multimedia and telephony capabilities" would include "microphones, speakers, and video cameras."  Marchand at 7:2-6.  Williams discloses that it was well-known to implement a speaker and microphone in a mobile phone and also describes a touch screen.  Williams at 5:5-7; 17:24-26.  Implementing a speaker and a microphone, as disclosed in Williams, as well as a touchscreen on a wireless device, such as Marchand's mobile phone, was well-known prior to the '033 Patent.

59.     Limitation 65[d] of claim 65 recites "wherein the first wireless device includes software applications including a telephony application, a personal information manager application including emails, and a location application for providing a current location of the first wireless device."  Marchand and Williams render obvious this limitation.  For example, Marchand's mobile phone "provides a call-control interface" by implementing "a cellular radio modem and a call control client."  Marchand at 5:3-6; 7:20.  In addition, Marchand's call control client enables its mobile phone to place telephone calls and send email on behalf of devices on the local wireless network.  Marchand at 10:18-23.  From this disclosure, Marchand renders obvious software including a telephony application and a personal information manager application including emails.  Additionally, Williams discloses software for a mobile device that includes "email mode" and an "address book and other applications."  Williams at 1:6-8; 11:15-16; 15:8-17.  Williams also discloses "GPS" functionality for a mobile device.  Williams at 15:1-2; 15:8-10.  By using software with GPS functionality to provide location stamped data, Williams renders obvious a location application for providing a current location of a first wireless device.

60.     Limitation 65[e] of claim 65 recites "a second wireless device, in the short distance wireless network, to provide the first short-range radio signal."  This limitation is identical to limitations of claim 1, which was previously found by the PTAB to be taught by Marchand as supplemented by Nurmann and Vilander.  Marchand discloses, or at a minimum renders obvious, this limitation.  For example, Marchand discloses various second devices (e.g., a laptop and

1   printer) in a Bluetooth network sending signals to the mobile phone over short-range radio links.

2   Marchand at 7:9-11; 7:18-21.

3          61.     Limitation 65[f] of claim 65 recites "wherein the software component includes a

4   network address translator software component to translate between a first Internet Protocol ("IP")

5   address provided to the first wireless device from the cellular network and a second address for the

6   second wireless device provided by the first wireless device."  This limitation is identical to

7   limitations of claim 1, which was previously found by the PTAB to be taught by Marchand as

8   supplemented by Nurmann and Vilander.  Marchand discloses, or at a minimum renders obvious,

9   this limitation.  For example, Marchand's "mobile phone receives IP packets from the GPRS

10  network through its public IP address, and forwards the received packets to the private IP address

11  of the destination in the Piconet."  Marchand at 10:31-11:2.  The mobile phone "also translates in

12  the other direction for data going out of the Piconet to the GPRS network." Marchand at 7:14-17.

13  That translation of a "public IP address" of the mobile phone in an IP packet received from the

14  GPRS network "to the private IP address of the appropriate device" is performed by a network

15  address translator software component of the mobile phone.

16         62.     Limitation 65[g] of claim 65 recites "wherein the software component includes a

17  service repository software component to identify a service provided by the second wireless

18  device."  This limitation is identical to limitations of claim 1, which was previously found by the

19  PTAB to be taught by Marchand as supplemented by Nurmann and Vilander.  Marchand

20  discloses, or at a minimum renders obvious, this limitation.  For example, Marchand's devices in a

21  Bluetooth network can "discover, join, and download services" from a JINI Lookup Service.

22  Marchand at 6:19-22; 7:23-25; 8:11-28.  The JINI Lookup Service is provided "for making

23  services available to the plurality of devices in the Piconet" and "contains a list of available

24  services provided by other devices."  Marchand at 3:11-12; 5:13-14.  The JINI Lookup Service

25  corresponds to the "service repository software component" because it identifies and provides

26  services from one device to another in a Bluetooth network and is implemented using software.

27

28

63.     In addition, the claims of the '033 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of the prior art cited in Apple's Invalidity Contentions served in *IXI Mobile (R&D) Ltd. et al. v. Apple Inc.*, No. 3:2015-cv-03755 and the 2014 Litigations.

64.     In addition, the claims of the '033 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of the prior art cited in Samsung's Invalidity Contentions served in *IXI Mobile (R&D) Ltd. et al. v. Samsung Electronics Co., Ltd. et al.*, No. 4:2015-cv-03752 and the 2014 Litigations.

65.     In addition, the claims of the '033 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of the prior art cited in the petitions for *inter partes* review filed in *Apple Inc. v. IXI IP, LLC*, Case Nos. IPR2019-00124, IPR2019-00125, IPR2019-00139, IPR2019-00140, IPR2019-00141, and IPR2019-00181.

66.     In addition, the claims of the '033 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of the prior art cited in *Ex Parte* Reexamination No. 90/014,330, currently pending in the PTO.

67.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

68.     A judicial declaration is necessary and appropriate so that Apple may ascertain its rights regarding the '033 Patent.

69.     Apple is entitled to a judicial declaration that the '033 Patent is invalid.


**PRAYER FOR RELIEF**

Apple respectfully requests the following relief:

A.      That the Court enter a judgment declaring that res judicata bars IXI from asserting the '033 Patent against Apple;

B.      That the Court enter a judgment declaring that Apple has not infringed and does not infringe any valid and enforceable claim of the '033 Patent;

C.      That the Court enter a judgment declaring that the '033 Patent is invalid;

1     D.     That the Court declare that this case is exceptional under 35 U.S.C. § 285 and

2           award Apple its attorneys' fees, costs, and expenses incurred in this action;

3     E.     That the Court award Apple any and all other relief to which Apple may show

4           itself to be entitled; and

5     F.     That the Court award Apple any other relief as the Court may deem just, equitable,

6           and proper.

### JURY DEMAND

Apple hereby demands a jury trial on all issues and claims so triable.

DATED: October 18, 2019

By:  /s/ John M. Desmarais

JOHN M. DESMARAIS (Bar No. 320875)
jdesmarais@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901

*Attorney for Plaintiff Apple Inc.*